## PUNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Michael E. Romero

In re:

Robert C. Rankin,

Debtor.

Bankruptcy Case No. 25-17369 MER

Chapter 13

## ORDER

THIS MATTER comes before the Court on the Amended Motion for Relief from Stay ("**Motion**") filed by Nancy Archuleta, the Response filed by Debtor, Robert Rankin and further briefing by both parties.[1]

## BACKGROUND

The Motion concerns real property located at 1182 E. Tidy Road, Pueblo West, CO 81007 (the "**Property**").  The basic facts concerning the Property are undisputed.  The Debtor originally purchased the Property in 2014.  At some point, Archuleta moved in and became a joint owner of the Property.  Archuleta and Rankin are co-obligors on a mortgage encumbering the Property owed to Freedom Mortgage Corporation.  The Property is also encumbered by a lien held by the Department of Housing and Urban Development ("**HUD**").  Although not specifically described in the Motion, it appears that Archuleta is also a co-obligor on the HUD debt.[2]  Archuleta moved out of the Property in 2022.  The Debtor currently resides on and operates his landscaping/snow removal/dump truck business from the Property.

In 2024, Archuleta initiated a state-court action in the Pueblo County District Court to partition the Property.[3]  After the Debtor failed to respond to Archuleta's state court complaint, the state court entered a default judgment against the Debtor on March 12, 2025, ordering the Property to be sold and appointing a real estate commissioner to conduct the sale.[4]  The Debtor later filed a motion to set aside the default judgment. Before the state court ruled on the request, the parties reached a resolution embodied in a settlement agreement.  That settlement agreement required the Debtor to pay off the HUD debt and assume the Freedom Mortgage debt by June 27, 2025.  If the Debtor failed to meet this deadline, the settlement agreement provided that the previously appointed real estate commissioner would proceed to sell the Property, with net

---

[1] ECF Nos. 48, 57, 81, 82.

[2] The Debtor lists Archuleta as a co-debtor for the HUD debt on Scheule H.  *See* ECF No. 1. Documentation attached to the proof of claim filed by HUD indicates Archuleta is a co-obligor.  *See* Proof of Claim 1-1.

[3] *Archuleta v. Rankin*, Case No. 2024CV30628.

[4] Motion for Relief from Stay, ECF 48, at Ex. 1.

proceeds to be distributed 50/50 between Debtor and Archuleta.  The Debtor did not meet the June 27 deadline, and Archuleta filed a motion to enforce the settlement agreement.  The state court granted that motion by order dated October 9, 2025.  That order provided: "[t]he [P]roperty will be sold by appointed Real Estate Commissioner, Karen Steenbergen, in accordance with her report filed on April 30, 2025, with the proceeds from the sale of the Property shall be distributed as instructed in paragraph 4 of the Settlement Agreement."[5]  The Debtor did not appeal the October 9 state court order, but nevertheless declined to cooperate with the sale by the real estate commissioner.  Archuleta then filed a motion with the state court on October 27, 2025, to allow the real estate commissioner full authority to sell the Property without Debtor's consent.  On November 11, 2025, the Debtor filed his Chapter 13 bankruptcy petition.  On November 12, 2025, one day after the petition date, the state court granted Archuleta's motion, giving the real estate commissioner full authority to sign all necessary documentation for the sale.[6]

In his bankruptcy case, the Debtor listed Archuleta as a secured creditor on his Schedule D with a claim of $26,000.[7]  Debtor also filed a secured proof of claim on Archuleta's behalf in the amount of $20,000.[8]  His latest proposed amended Chapter 13 plan also appears to treat Archuleta as a secured creditor by scheduling her with a claim in the amount of $20,000 in part 6.2.[9]  Based on the proposed plan, it appears Debtor hopes to retain the Property and essentially buy out Archuleta's interest in the Property for $20,000.  However, it remains unclear how Debtor arrived at that figure, when he proposes to pay those funds to Archuleta, or how he will remove her name from the Property's title.

In her Motion, Archuleta seeks relief from the automatic stay to permit enforcement of the state court orders for the sale of the Property by the real estate commissioner.  She argues there is cause to do so under 11 U.S.C. § 362(d)(1) due to the Debtor's alleged bad faith.[10]  She contends the Debtor filed his bankruptcy case solely to avoid the state court's orders.  The Debtor denies acting in bad faith and contends he needs his house to operate his business and fund payments to creditors under his proposed plan.  He also argues Archuleta is adequately protected by alleged equity in the Property.

---

[5] *Id*., Ex. 2.

[6] *Id*., Ex. 4.

[7] ECF No. 1.

[8] Proof of Claim No. 14-1.

[9] ECF No. 89.

[10] All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.

## DISCUSSION

Section 362(d)(1) permits relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."[11] Nothing in the Bankruptcy Code defines "cause." Consequently, relief based on a finding of cause "is a discretionary determination made on a case-by-case basis."[12]  The burden is on the moving party to make an initial showing of "cause" for relief from the stay.[13]  The burden then shifts to the debtor to demonstrate why the stay should remain in place.[14]

In this case, Archuleta's primary argument for cause under § 362(d)(1) is that Debtor filed his case in bad faith.[15]  A debtor's bad faith in filing a bankruptcy petition may constitute "cause" for relief from the automatic stay.[16]  Courts consider various factors in determining bad faith, including whether the debtor: (1) has only one asset; (2) has only one creditor; (3) acquired the property which was posted for foreclosure and prior owners had been unsuccessful in defending against the foreclosure; (4) was revitalized on the eve of foreclosure to acquire the insolvent property; (5) has no ongoing business or employees; (6) lacks a reasonable possibility of reorganization; and (7) the [bankruptcy] filing stopped the foreclosure.[17]  Not all factors need to be considered, and courts have great discretion in deciding bad faith.  As this Court previously held: "Individual factors, in and of themselves, may not lead to a conclusion that a bankruptcy filing is in bad faith. Bad faith is found when the cumulative effect of these individual factors together paints a factual picture that leads to the inescapable conclusion that use of the bankruptcy laws by the debtor is inappropriate."[18]  "[T]he concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances."[19]

Archuleta addresses only one of the above factors, arguing that the Debtor filed his case solely to stop the state-court partition case.  The Court agrees the timing of the bankruptcy case indicates a desire by the Debtor to avoid the court-ordered sale.

---

[11] 11 U.S.C. § 362(d)(1).

[12] *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (10th Cir. BAP 2003).

[13] *Id.*

[14] *Id.* at 141.

[15] The Debtor's brief suggests that Archuleta is seeking relief under § 362(d)(4), but Archuleta does not cite to that subsection nor make any arguments that Debtor filed his case as part of a scheme to delay, hinder or defraud creditors that involved either transfer of the Property or multiple bankruptcy filings. Thus, the Court finds § 362(d)(4) inapplicable.

[16] *P. Rim Inv., LLP v. Oriam (In re P. Rim Investments, LLP)*, 243 B.R. 768, 772 (D. Colo. 2000); *In re Laguna Associates Ltd. Partn.*, 30 F.3d 734, 737 (6th Cir. 1994).

[17] *Udall v. FDIC (In re Nursery Land Development, Inc.)*, 91 F.3d 1414 (10th Cir. 1996).

[18] *In re Gunnison Center Apts., LP,* 320 B.R. 391, 400 (Bankr. D. Colo. 2005).

[19] *In re Golden*, 2026 WL 709260 (Bankr. D N.M. March 12, 2026) (citing *In re Culligan Ltd.*, 2023 WL 5942498, at *19 (Bankr. S.D.N.Y. Sept. 12, 2023)).

However, that fact alone is insufficient to lead to a finding of bad faith.  Many Chapter 13 debtors file bankruptcy to save their homes.  Without additional factors, the Court does not believe Archuleta has shown "extraordinary circumstances" sufficient to show bad faith.

The lack of bad faith does not mean relief from stay under § 362(d)(1) is inappropriate.  When determining whether to lift the stay to permit pending litigation in another forum, courts consider a different list of factors, often referred to as the "*Curtis* factors."  Those factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.[20]  "Not all of these factors will be relevant in every case . . . [a]nd the court need not give equal weight to each factor."[21]

Because the analysis under the relevant factors listed above overlap, the Court will consider them in two groups.  The first group focuses on the status and nature of the state court proceedings:

**(1) whether relief would result in a partial or complete resolution of the issues**
**(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action**
**(6) whether the action primarily involves third parties**
**(10) the interests of judicial economy and the expeditious and economical resolution of litigation**
**(11) whether the parties are ready for trial in the other proceeding**

The partition action is purely a matter of state law, which the state court has the expertise to address.  The partition action has progressed to the point where the state court has ordered the sale of the Property by a real estate commissioner.  This Court has no jurisdiction over that real estate commissioner.  The state court is best suited to handle the next stages of the partition action, including overseeing the real estate commissioner's sale, payment of expenses, and division of the net sale proceeds.  The last order entered by the state court allowing the real estate commissioner to proceed

---

[20] *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).

[21] *In re Taub*, 413 B.R. 55, 61-62 (Bankr. E.D.N.Y. 2009).

4

without the Debtor's consent was entered one day *after* the petition date.  As such, it is void and of no effect.[22]  The state court is best positioned to address any future requests for similar relief.  Thus, these factors weigh in favor of granting relief from the stay.

The next set of factors concerns the effects on the Debtor, Archuleta, and the bankruptcy case:

> **(2) lack of any connection with or interference with the bankruptcy case**
> **(7) whether litigation in another forum would prejudice the interests of other creditors**
> **(12) impact of the stay on the parties and the balance of harms**

The Debtor's main argument against relief from stay is that selling the Property will adversely affect his living situation, his business, and his ability to fund a plan.  He contends the Property is "extremely necessary" to an effective reorganization.  The Court is sympathetic to the disruption caused by the Debtor losing his home and having to relocate his business.  However, Debtor's arguments about needing the Property for an effective reorganization are "premised on a fallacy."[23]  The fallacy is that the Debtor is entitled to retain and use the Property as if he were the 100% owner.  He is not.  The Court has not located, nor has the Debtor identified, any provision of the Bankruptcy Code or case law authority that would allow him to use a Chapter 13 plan to dispossess Archuleta of her co-ownership interest.[24]  Nor has the Debtor provided any authority that would allow him to treat Archuleta's ownership interest in the Property as a secured claim in his Chapter 13 plan.[25]

A bankruptcy court faced a similar issue in *In re Nims*.[26]  In that case, the debtor's ex-wife had initiated a pre-petition partition action in state court regarding the parties' former residence.  The ex-wife and debtor jointly owned the residence and were co-obligors on a mortgage that encumbered the home.  The state court ordered that the residence be sold by an independent trustee.  The debtor refused to cooperate with the sale and filed a Chapter 13 bankruptcy case.  The ex-wife moved for relief from the automatic stay to allow the partition action to continue.  The bankruptcy court found cause to grant the motion under § 362(d)(1).  The court specifically rejected the debtor's

---

[22] *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990) ("It is well established that any action taken in violation of the stay is void and without effect.").

[23] *In re Badax, LLC*, 608 B.R. 730, 740 (Bankr. C.D. Calif. 2019).

[24] *Id*. (concluding debtor could not use a chapter 11 plan to dispossess co-owner's interest in real property).

[25] The Court gave the Debtor an opportunity to file an additional brief containing authority for his treatment of Archuleta.  *See* ECF No. 76.  The Debtor's brief cited only two unpublished cases from a bankruptcy court in Central District of California, and those cases involved motions for relief from stay filed by actual secured creditors with liens on the subject property.  Neither case is relevant or persuasive authority for the issues raised in this case.

[26] *Flaherty v. Nims (In re Nims)*, Case No. 11-15968, 2011 WL 1403771, at *4 (Bankr. D. Md. April 13, 2017).

assertion that his ex-wife held only a claim in the bankruptcy case that he could pay over time in accordance with a plan: "But no authority cited by Debtor allows him to force a tenant in common to sell her interest in property through a bankruptcy plan. That is especially the case here, since the Debtor's forced buyout, even if feasible, would not relieve the [ex-wife] of her obligations on the deed of trust loans and therefore would continue to cause her harm."[27]  The court further concluded that the sale would not harm the debtor's bankruptcy estate because proceeds from the sale of the property would be available for distribution to creditors.  The court also recognized the debtor would be forced to relocate the business he operated from the residence, but held such potential harm was overstated and outweighed by other factors.

This Court agrees with the court's analysis in *Nims*.  Although the Debtor has made saving the Property the focus of his proposed plan, that plan has no realistic chance of being confirmed.  He cannot divest Archuleta of her ownership interest by simply calling her a secured creditor and proposing to pay her imaginary secured claim over time.[28]  Debtor contends that Archuleta is "adequately protected" by equity in the Property. Still, the concept of adequate protection is inapplicable in the circumstances of this case because Archuleta is a co-owner and not a secured creditor.[29]  Furthermore, other creditors in this case would likely benefit from the real estate commissioner's sale of the Property.  The two secured claims held by Freedom Mortgage and HUD will be paid from the proceeds of the sale, and the debtor's portion of any excess proceeds could be used to pay other creditors.

Undoubtedly, the Debtor will suffer harm as a result of the sale of his home. However, that harm is counterbalanced by the harm to Archuleta caused by the continuation of the stay, because she would be unable to realize the economic benefit of her ownership interest in the Property and would not be relieved of her obligations under the deeds of trust held by Freedom Mortgage and HUD.  Moreover, as discussed above, continuing the stay to allow the Debtor to pursue a plan that will ultimately not alter Archuleta's co-ownership rights is an exercise in futility.  The Debtor cannot utilize a Chapter 13 plan to obtain full ownership of the Property without Archuleta's consent, something she is clearly unwilling to give.  The partition action is the best path for ending the parties' co-ownership and to "bring to an end the undivided interests of the

---

[27] *Id*. at *4.

[28] *In re Nims*, 2011 WL 1403771, at *4; *In re Badax, LLC*, 608 B.R. at 740; *In re Dahlgren*, 418 B.R. 852, 858 (Bankr. D.N.J. 2009) ("[T]he Debtor has provided no authority to support the proposition that a chapter 13 debtor has the right to divest a joint property owner of her interest in the property and fix that interest as a monetary claim. The court's own analysis of the issue leads it to conclude that the interest of a co-owner in property may not be divested through a chapter 13 plan."); *In re Taing*, 2024 WL 3770351, at * (Bankr. D. Mass. Aug. 12, 2024) (chapter 11 debtor cannot use plan to impact co-owner's rights nor the secured lender's rights against the co-owner); *In re Geneva ANHX IV LLC*, 496 B.R. 888, 901-02 (Bankr. C.D. Ill. 2013) (chapter 11 debtor cannot use a plan and substantive consolidating to deprive other tenants in common of their ownership interests).

[29] *Frazier v. Public Guardian's Office of Santa Clara Cty (In re Frazier)*, 2008 WL 8448333, at *2 (9th Cir. BAP Sept. 25, 2008) (holding that adequate protection did not apply when considering co-owner's motion for relief from stay to initiate partition action).

parties so that each owner may enjoy his estate without supervision or hindrance from the other or others."[30]

Thus, the Court finds all the factors discussed above weigh in favor of granting relief from the stay.  The Court finds there is cause under § 362(d)(1) to grant the Motion and allow the parties to return to state court for further proceedings as that court deems appropriate, including sale of the Property by the real estate commissioner.

## CONCLUSION

For the foregoing reasons, the Court hereby

ORDERS that the Amended Motion for Relief from Stay is GRANTED and the parties may continue litigation in Case No. 2024CV30628, Pueblo County District Court, including sale of the Property located at 1182 Tidy Drive, Pueblo West, CO 81007.[31]  It is

FURTHER ORDERED that the hearing set for May 21, 2026, is VACATED.

Dated: May 13, 2026                    BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court

---

[30] *Shell Oil Co. v. Seeligson*, 231 F.2d 14, 17 (10th Cir. 1955).  There is a provision of the Bankruptcy Code—§ 363(h)—that allows for a trustee to sell both the estate's interest and the interests of a non-debtor co-owner in property in certain circumstances.  Courts are divided on whether this power is available to chapter 13 debtors.  *See In re Wrublik*, 312 B.R. 284, 286 (Bankr. D. Md. 2004).  The Court need not address this issue as the Debtor has not sought to sell the Property.

[31] In her Motion, Archuleta speculates as to how the proceeds from a sale of the Property will be applied/distributed.  The Court takes no position on the accuracy of such statements and leaves such issues to be decided by the state court and/or the real estate commissioner.